HARDY, Judge.
This is an action by plaintiffs, husband and wife, for damages resulting from an automobile collision and they have appealed from judgment in favor of defendants rejecting their demands.
The material facts which were established without substantial dispute, except as hereinafter noted, are that a Pontiac automobile driven by plaintiff, Mrs. Blake, accompanied by Mrs. Sanders as a passenger, about 4:00 o’clock on the afternoon of August 17, 1964, was moving north on North Market Street in the City of Shreveport in the extreme east of the three lanes provided for northbound travel. The Blake car for several blocks had been followed by a Chevrolet automobile driven by John Kirkland, Jr., who was accompanied by his father, the owner of the vehicle which was insured by defendant, Travelers. Mrs. Blake and Mrs. Sanders were en route to an establishment located at the corner of Aero and Grimmet Drives, a few blocks east of North Market Street, where they intended to begin their employment. Aero Drive makes an inverted “Y” intersection with North Market Street from the east, and although it is not a divided highway the two prongs of the “Y” intersection are divided by a small island of neutral ground perhaps 10 feet, more or less, in diameter at its widest point. Mrs. Blake was unfamiliar with the route and as she reached an intersection from the east approximately one block south of Aero Drive she substantially slowed her speed from 30 or 35 MPH with the intention of turning to her right. However, upon being corrected by Mrs. Sanders, she passed this intersection, continued north at a slow rate of speed, turned on her blinker light indicating a right turn and prepared to make such a turn into the south prong of the “Y” intersection of Aero Drive. According to the testimony of Mrs. Blake and Mrs. Sanders their' passage into the south prong was blocked by an automobile which had pulled out from a filling station. Both of the Kirklands testified that they did not ob *674 serve such a vehicle. However, Mrs. Blake drove past the south prong and the small island of neutral ground and then turned into the north prong of the Aero Drive intersection. As the Blake car was approximately half its length off of North Market Street it was struck on the left rear, by by the right front of the following Kirkland vehicle.
It is the principal contention of the defense that the turn made by Mrs. Blake was both improper and illegal, and, further, that Mrs. Blake, after halfway completing the turn, brought her car to an abrupt stop, which action created an emergency situation, the consequences of which could not be avoided by young Kirkland. It is also urged on behalf of defendant that although young Kirkland anticipated Mrs. Blake’s turn into Aero Drive at the south prong, he assumed that she would not make an attempt to turn into the north prong.
There is no dispute with respect to the legal principle established, both by statute and jurisprudence, that the driver of a following vehicle is charged with the obligation of preserving such an interval and rate of speed as will permit him to avoid a collision with a preceding vehicle.
We think the evidence preponderates in favor of the conclusion that Mrs. Blake, by the use of her directional blinker signal, gave timely notice to following traffic in the extreme east lane that she intended to make a right turn. Although young Kirkland testified he did not notice the directional signal, it is abundantly clear that he did expect a right turn.
The next question is whether Mrs. Blake was guilty of an illegal or negligent turn into the north prong of the Aero Drive intersection.
Two sections of the Shreveport City Code with reference to the regulation of traffic are brought into consideration. Defendant in support of the contention that Mrs. Blake made an illegal turn relies upon Section 19-74, which reads as follows:
“Whenever any street or highway in the city has been divided into two roadways by leaving an intervening space or by a physical barrier or a clearly indicated section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway and no vehicle shall be driven over, across or within any such dividing space, barrier or section, except through an opening in such physical barrier or dividing section or space or at a crossover or intersection properly established.”
There is a serious question as to whether the above quoted provision is sufficiently definite as to justify its application in this case. It must be noted that Aero Drive is not a City street divided into two roadways since only the intersection with North Market is divided. It is further to be observed that Mrs. Blake did not drive over, across or within the very small island which separated the two prongs of the intersection.
Counsel for plaintiff counters the implication of violation of the above provision by reliance upon Section 19-53 of the Code, which reads as follows:
“Whenever any ordinance of the city designates any one-way street or alley the traffic engineer shall place and maintain signs giving notice thereof, and no such regulation shall be effective unless such signs are in place. Signs indicating the direction of lawful traffic movement shall be placed at every intersection where movement of traffic in the opposite direction is prohibited.”
The record is not only devoid of any evidence of the placement of signs regulating the direction of traffic movement at the intersection but the photographs introduced by both plaintiff and defendant show that no such signs were in place. Under this circumstance, it must be concluded that there was no indicated prohibition for the use of either prong of the fork for both entrance and exit.
*675 Nor do we feel justified m the conclusion that Mrs. Blake was guilty of an improper or negligent action in making a right turn into the north prong at a distance of a car length or less from the south prong. We think the facts clearly indicate that young Kirkland did not observe the degree of care which was indicated under the circumstances. He was on notice of Mrs. Blake’s intention of making a turn and he was obliged to drive with such care and to keep the Blake car under such close observation as would have permitted him to avoid a rear-end collision, even if, as is strenuously contended, the Blake car came to a stop before clearing North Market in the course of its right turn. Indeed, if Mrs. Blake had brought her car to a stop without attempting a turn of any kind, we do not think the driver of the following car would be exonerated of negligence.
We now proceed to a consideration of the amount of the award of damages in favor of plaintiffs. Brief of counsel for plaintiffs itemizes a total of $2,437.34 as special damages for which recovery should be allowed by plaintiff husband. After examination of the record we think certain of these items should be disallowed or reduced. It appears unnecessary to encumber this opinion with a detailed discussion of each item, and, in our opinion, it is sufficient to list the items and amounts which have been adequately established by proof, as follows:
Hospital bills $420.60
Doctors bills 292.74
Maid services (3 weeks at $20.00 per week and 1 day per week for 13 weeks at $4.00 per day) 112.00
Drugs and medicines 35.00 ■£*»
Loss of earnings of plaintiff ■ wife (20 weeks at $35.00 per week) 700.00 Or
Total $1,560.34
As the result of the injuries received in the accident Mrs. Blake was hospitalized on two separate occasions; from August 19th to August 27th, inclusive, and September 1st to September 6th, inclusive, for a total of 15 days. After treatment by her family physician Mrs. Blake was referred to Dr. Overdyke, an orthopedic specialist, for further treatment. Dr. Overdyke’s diagnosis after his first examination of Mrs. Blake, made some two months following the accident, was sprain of the cervical spine with minimal to moderate occipital neuralgia and a minimal compression fracture of the fifth dorsal vertebra. The doctor testified that he found relatively few neck symptoms, and in his opinion the patient’s pain was primarily caused by the fracture of the vertebra. Subsequently, this witness made examinations in November of 1964 and January of 1965, and according to his testimony maximum recovery had been reached on the occasion of the last examination and plaintiff had already returned to her normal housework duties without serious pain or discomfort.
We do not find thgt plaintiff’s injuries were either exceptionally serious or of long duration, and for this reason we feel that she is entitled only to recovery of a moderate amount of damages, which, accordingly, we fix in the principal sum of $2,500.-00.
For the reasons assigned the judgment appealed from is annulled, set aside and reversed, and,
It is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Tommy H. Blake, in the full sum of One Thousand Five Hundred Sixty and 34/100 ($1,560.34) Dollars, and in favor of plaintiff, Sybil Lillian Blake, in the full sum of Two Thousand Five Hundred and No/100 ($2,500.00) Dollars, against The Travelers Indemnity Company, together with legal interest from date of judicial demand until paid, and all costs of both courts.